IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARY GRAHAM as the Personal Representative
of the Estate of Kenneth Graham, decedent,
MARY GRAHAM, individually and in her
personal capacity,

    Plaintiffs,

vs.                                                        Civ. 13-673 MCA/GBW

COUNTY OF DONA ANA, et al.,

    Defendants.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON
PLAINTIFF'S COMPLAINT AND
<u>MEMORANDUM IN SUPPORT THEREOF</u>**

COMES NOW Defendants Dona Ana County, Dona Ana County Sheriff's Office[1], and DASO Deputy Samuel Rashe, by and through their counsel, Jonlyn M. Martinez, Law Office of Jonlyn M. Martinez, LLC, and hereby move this Honorable Court for summary judgment on Plaintiff's Complaint pursuant to Fed.R.Civ.P. 56, because there is no genuine issue of material fact, and Defendants are entitled to judgment as a matter of law.

Wherefore, Defendants pray that this Honorable Court enter summary judgment in their favor on all Counts of Plaintiff's Complaint.

Given the dispositive nature of the motion, concurrence by opposing counsel was not sought.

---

[1] Of course, the proper Defendant for the County would be the Board of County Commissioners, and the "Sheriff's Office" cannot be a separate Defendant as a matter of law because governmental sub-units are not properly suable entities. ***Martinez v. Winner***, 771 F.2d 424, 444 (10th Cir.1985) ("("The 'City of Denver Police Department' is not a separate suable entity").

1

Further grounds in support of this Motion are set forth in the Memorandum below.

**INTRODUCTION**

Plaintiff is the wife and Personal Representative of her deceased husband, and sues both on behalf of his estate, and on her own individual behalf. The essence of the claim is that her husband was dying, but had a fit in which he struck out at his family, causing them to call 911. The responding officer ultimately arrested him for assault, and the conditions of his release forbade contact, and so she was unable to see him, and he died about a week later of his disease.

The Complaint has four Counts: 1) a Section 1983 claim of arrest and seizure without probable cause in violation of the Fourth Amendment to the U.S. Constitution; 2) a Section 1983 excessive force claim in violation of the Fourth Amendment; 3) a Section 1983 claim of malicious prosecution, allegedly in violation of the First, Fourth and Fourteenth Amendments to the U.S. Constitution; and 4) a claim of emotional distress, apparently both negligent and intentional. Plaintiff maintains that the first three Counts are also brought under the New Mexico Constitution and the New Mexico Tort Claims Act ("NMTCA"), and that the County is liable for same under *respondeat superior*. (Complaint ¶ 46-47, 50-51,[2] 52[56] and 53[57])

However, none of these claims are viable, because the Section 1983 claims do not survive the unrelated death of Mr. Graham, nor could the County be liable in any event under ***Monell v. Dep't of Social Services***, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), there is no applicable waiver for the state law claims, and Plaintiff cannot meet the elements for any emotional distress claim. Also, Plaintiff inappropriately seeks punitive damages under both state and federal law; while she alleges that these are sought to the extent Deputy Rashe was acting

---

[2] After paragraph 53 in the Complaint, the paragraphs begin renumbering at 50, so certain paragraph numbers have been used twice; for ease of reference for this Court, the "real" number will appear in brackets.

2

"outside the scope of his employment" (Complaint ¶ 62 [66]), there are simply no facts to support such an assertion. Further, if there were, it would only serve to demonstrate that there was no liability under the NMTCA at all.

## STATEMENT OF FACTS

For purposes of this Motion, Defendants submit that the following are undisputed:

**Fact No. 1:** Plaintiff's husband was dying from colon cancer (having "underwent chemotherapy and radiation treatments to no avail," as well as having contracted a MRSA infection after surgery), and Hospice services were easing "his impending death." (Complaint ¶ 12, 13 and 15)

**Fact No. 2:** On May 16, 2011, Mr. Graham was allegedly having a "bad day" (Complaint ¶ 16); he assaulted his wife and son, leading them to call 911 (wherein Plaintiff reported that "he went plumb out of his mind, he tried to hit me, he took a swing at the boys, and had ripped his oxygen mask off.") (Complaint ¶ 19, 21 and 22) When Mrs. Graham called 911 she disclosed that Mr. Graham threatened her and that she was afraid of him. *See Deposition of Mary Graham*, attached hereto as Exhibit 1, p. 107, lines 19-25.

**Fact No. 3**: A deputy and ambulance were duly dispatched to the address; it is alleged that Plaintiff told Deputy Rashe that Mr. Graham was "terminally ill and was having an episode." (Complaint ¶ 29)

**Fact No. 4**: When Mr. Graham saw Deputy Rashe, he allegedly screamed at him to leave or he would "beat him;" Deputy Rashe apparently saw a rock in his hand, resulting in him being tased. (Complaint ¶ 31, 32, 39)

**Fact No. 5**: Deputy Rashe was informed by dispatch that Mr. Graham was being violent and threatening Mrs. Graham. *See Exhibit B*, attached to Affidavit of Almitra Wynn, attached hereto as Exhibit 2. Deputy Rashe was informed by Mr. Graham's family that he was being very aggressive and violent. *Id*. When Deputy Rashe made contact with Mr. Graham he was told to "get the f*** off my property" and "I will beat your a**." *Id*. Then Mr. Graham stated that he was going to hit Deputy Rashe and he attempted to pick up a rock. *Id*. Fearing for his safety, Deputy Rashe attempted to tase Mr. Graham and then took him to the ground and placed him in custody. *Id*.

**Fact No. 6**: Deputy Rashe arrested Mr. Graham, and charged him with assault. (Complaint ¶ 35, 37)

**Fact No. 7**: Mr. Graham died of cancer. *See Deposition of Mary Graham*, at p. 13, lines 15-16, attached hereto as Exhibit 1. No one has told Mrs. Graham that Mr. Graham was injured as a result of his contact with Deputy Rashe. *Id*., at p. 64, lines 12-19. Moreover, medical records from the day of the incident indicate Mr. Graham's only injury resulting from his contact with Deputy Rashe was an abrasion on the forehead. *See Exhibit A*, attached to Affidavit of Almitra Wynn, attached hereto as Exhibit 2.

**Fact No. 8**: Plaintiff alleges that her personal claim is solely one for "emotion [sic] distress." (Complaint ¶ 4, and see ¶ 2)

**Fact No. 9**: Mr. Graham had cancer in every organ of his body and Mrs. Graham felt that it was better that he did not have to live any longer. *See Deposition of Mary Graham*, attached hereto as Exhibit 1, at p. 113, lines 12-20.

## ARGUMENT

### STANDARD OF REVIEW

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Celotex v. Catrett,* 477 U.S. 317, 322 (1986). The opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party. *Id*. at 248. Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment. *Branson v. Price River Coal Co.,* 853 F.2d 768, 771-72 (10th Cir. 1988).

While courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion, that is "only if there is a 'genuine' dispute as to those facts":

> When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris,* 550 U.S. 372, 380 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).


**I.  The Plaintiff's Claims Brought Under 42 U.S.C. § 1983 Do Not Survive Mr. Graham's Death.**

Plaintiff brought this suit after the death of Mr. Graham, and his death was not attributable to any of the conduct alleged herein; accordingly, she can only sue as his Personal

5

Representative on claims that survive his death. It is submitted that this aspect of this case is controlled by the comprehensive analysis of the Tenth Circuit in *Oliveros v. Mitchell*, 449 F.3d 1091 (10th Cir. 2006). There the Court held that one looked to state law to determine whether claims pursuant to Section 1983 survived, that Section 1983 claims such as those presented herein required intentional conduct, and concluded that under New Mexico law "intentional tort claims do not survive the injured party's unrelated death." 449 F.3d at 1094.

In the present case Mr. Graham died of terminal cancer. *See Statement of Facts (hereafter "Facts")*, at ¶ 7. In fact, Mr. Graham had cancer in every organ of his body and Mrs. Graham felt that it was better that he did not have to live any longer. *Id*. Thus, the Plaintiff's claims brought under 42 U.S.C. § 1983 on behalf of Mr. Graham fail because his death is unrelated to his contact with Deputy Rashe.

**II.    Mrs. Graham's Claims Are Not Actionable Under 42 U.S.C. § 1983**.

It is well-established that Section 1983 does not create substantive rights; rather, it merely provides civil remedies for deprivations of rights established under the Constitution or federal laws." reasonable. *Hernandez ex. rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs*., 380 F.3d 872, 879 (5th Cir. 2004) *(citing Felton v. Polles*, 315 F.3d 470, 479 (5th Cir. 2002) ("[Section 1983] is not itself a source of substantive rights; instead, it provides a method for vindicating federal rights elsewhere conferred.")). "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Harrington v. Harris***,** 118 F.3d 359, 365 (5th Cir. 1997).

In this case, Plaintiff seeks to base her § 1983 claims on Defendants' alleged violations of state tort law. Specifically, Plaintiff alleges that Defendants violated § 1983 by committing the

6

state law torts of intentional infliction of emotional distress. However, "it is fundamental to our federal jurisprudence that state tort claims are not actionable under federal law; a plaintiff under section 1983 must show deprivation of a federal right." *Nesmith v. Taylor*, 715 F.2d 194, 195 (5th Cir. 1983) (emphasis added).

State law torts that Plaintiff asserts as bases for his § 1983 claims are not actionable under § 1983. First, "although emotional damages are available under § 1983, a claim of intentional infliction of emotional distress . . . cannot form the basis of a § 1983 action because there is no constitutionally protected interest at stake." *Dibrell v. Huber*, 2006 U.S. Dist. LEXIS 2208 (S.D. Tex. Jan. 3, 2006), *citing Carter v. Jess*, 179 F. Supp. 2d 534, 540 (D. Md. 2001); accord *Voyticky v. Village of Timberlake,* Ohio, 412 F.3d 669, 678 (6th Cir. 2005) ("Intentional infliction of emotional distress, by itself, cannot amount to a constitutional violation. . . . We have not . . . ever held that intentional infliction of emotional distress, by itself, amounts to a cognizable constitutional claim remediable pursuant to 42 U.S.C. § 1983, and Plaintiff has not cited to any authority that would support such a claim.").

In this case, Mrs. Graham alleges that her claim is one for emotional distress. *Facts*, at 8. She has alleged no facts, nor could she, that any of her rights were violated by any of the Defendants. Therefore, Mrs. Graham's claims are not actionable under 42 U.S.C. § 1983 and must be dismissed.

**III.     Defendant Rashe Is Entitled To Qualified Immunity.**

Qualified immunity bars Section 1983 suits against defendants in their individual--but not official--capacities. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 167, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985) (citations omitted). The qualified immunity defense was created to shield public

officials "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982). It provides immunity from suit and not merely from liability. *See Mitchell v. Forsyth*, 472 U.S. 511, 526, 86 L. Ed. 2d 411, 105 S. Ct. 2806 (1985). It therefore spares defendants the burden of going forward with trial. *See Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995) (citing *Powell v. Mikulecky*, 891 F.2d 1454, 1457 (10th Cir. 1989)).

Once a moving party raises the defense of qualified immunity, the nonmoving party must (1) assert facts which, if true, would constitute a violation of a constitutional right, and (2) demonstrate that the "right was clearly established at the time such that a reasonable person in the [movant's] position would have known that [the] conduct violated the right." *Garramone v. Romo*, 94 F.3d 1446, 1449 (10th Cir. 1996) (citations omitted); *see also, e.g., Saucier v. Katz*, 533 U.S. 194, 201-02, 150 L. Ed. 2d 272, 121 S. Ct. 2151 (2001). When a constitutional claim of excessive force is brought against a law enforcement officer, the first part of this inquiry requires a court to determine whether the parties' submissions, viewed in the light most favorable to the plaintiff, could show the officer's conduct violated a constitutional right. *Cf. id*. at 201. The second part of the inquiry requires a court to "assess[] the objective legal reasonableness of the action at the time of the alleged violation and ask[] whether 'the right was sufficiently clear that a reasonable officer would understand that what he [or she was] doing violates that right.'" *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (quotation omitted); *Anderson v. Creighton*, 483 U.S. 635, 639, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987) (citations omitted).

If a nonmoving party fails to satisfy its two-part burden, a court must grant the moving party qualified immunity. *See Medina*, 252 F.3d at 1128. If the nonmoving party, however, successfully demonstrates the violation of a clearly established right, the moving party assumes

the normal summary judgment burden of demonstrating that no genuine issue of material fact exists that would defeat its claim for qualified immunity. *See Woodward v. City of Worland*, 977 F.2d 1392, 1396-97 (10th Cir. 1992) (citations omitted), *cert. denied*, 509 U.S. 923, 125 L. Ed. 2d 724, 113 S. Ct. 3038 (1993).

The Fourth Amendment reasonableness inquiry is objective and heavily fact dependent. *See, e.g., Wilson*, 52 F.3d at 1553. It also recognizes that the "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, . . . [and it] must embody allowance for the fact that police officers are often forced to make split-second judgments . . . in circumstances that are tense, uncertain, and rapidly evolving." *Graham*, 490 U.S. at 396-97. "The reasonableness of [an officer's] actions depends both on whether [the officer was] in danger at the precise moment that . . . force [was used] and on whether [the officer's] own reckless or deliberate conduct during the seizure unreasonably created the need to use such force.'" *Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. Okla. 1997)(*quoting Sevier v. City of Lawrence*, 60 F.3d 695, 699 (10th Cir. 1995)).

In the present case, Deputy Rashe was aware of the fact that Mr. Graham was being violent and aggressive. *Facts*, at ¶ 5. Mr. Graham then told Deputy Rashe he was going to hit him and he then picked up a rock. *Id*., at ¶¶'s 2-5. As a result of Mr. Graham's conduct, Deputy Rashe tased him, took him to the ground and arrested him. *Id*. Based on the foregoing, Deputy Rashe's conduct was reasonable and did not violate Mr. Graham's rights or any clearly established law. Therefore, Deputy Rashe is entitled to qualified immunity in this matter.

The Plaintiff's claims of malicious prosecution in violation of 42 U.S.C. § 1983 also fail. The Tenth Circuit "has recognized the viability of malicious prosecution claims under § 1983." *Taylor v. Meacham*, 82 F.3d 1556, 1560 (10th Cir. 1996). To establish a malicious-prosecution

claim under § 1983, a plaintiff must prove that the defendant initiated or continued a proceeding against him without probable cause. *See Becker v. Kroll*, 494 F.3d 904, 913-14 (10th Cir. 2007). "Unlike a false arrest or false imprisonment claim, malicious prosecution concerns detention only after the institution of legal process." *Wilkins v. DeReyes*, 528 F.3d 790, 798 (10th Cir. 2008)(internal quotation marks omitted). "In this context, a Fourth Amendment violation can exist only when a plaintiff alleges the legal process itself to be wrongful." *Wilkins v. DeReyes*, 528 F.3d at 798.

Under Tenth Circuit case law, a § 1983 malicious-prosecution claim includes the following elements: (i) the defendant caused the plaintiff's continued confinement or prosecution; (ii) the original action terminated in the plaintiff's favor; (iii) no probable cause supported the original arrest, continued confinement, or prosecution; (iv) the defendant acted with malice; and (v) the plaintiff sustained damages. *See Wilkins v. DeReyes*, 528 F.3d at 799. In a Fourth-Amendment malicious-prosecution case, "the third element deals only with the probable cause determination during the institution of legal process." *Wilkins v. DeReyes*, 528 F.3d at 799. In the present case, as set forth above, Mr. Graham threatened Deputy Rashe and then attempted to pick up a rock. *Facts*, at ¶ 5. Thus, probable cause existed for his arrest. Mr. Graham was released hours after his arrest. *See Deposition of Mary Graham*, attached hereto as Exhibit 1, at p. 59, lines 17-21. The charges against him were not dismissed for the lack of probable cause. Therefore, the Plaintiff cannot establish the requisite elements for the claim of malicious prosecution and Deputy Rashe is entitled to qualified immunity in this matter.

**IV.    The Plaintiff's Claims Brought Under 42 U.S.C. § 1983 For Supervisory Liability Fail.**

Plaintiff's contention that the County could be liable under *respondeat superior* is simply erroneous. The United States Supreme Court reemphasized in ***Ashcroft v. Iqbal***, 556 U.S.662, 129 S. Ct. 1937, 1948, 173 L.Ed.2d 868 (U.S. 2009), that government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. To establish the liability of the County, Plaintiff must show that the institution's policies caused the constitutional violation. ***McMillian v. Monroe County, Ala.,*** 520 U.S. 781,117 S.Ct. 1734, 1736, 138 L.Ed.2d 1 (1997). Thus, Plaintiff would have to show (i) that a constitutional violation occurred; and (ii) that a County policy was the moving force behind the violation. *See* ***Myers v. Oklahoma County Board of County Commissioners,*** 151 F.3d 1313,1320 (10th Cir. 1998). Even if one were to assume that Plaintiff could establish a constitutional violation herein, it obviously was not the result of a policy. ***And see Kelley v. City of Albuquerque, et al.,*** 375 F. Supp.2d 1183 (D.N.M. 2004).

> With respect to the claim against the County, the primary deficiency is a legal one. As the district court correctly noted, a local government may be held liable for its employees' constitutional violations only when those employees are "execut[ing the] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). We have no evidence before us suggesting that the conduct … alleged represented the execution of an official policy rather than gross deviations from such policy.

***Lujan ex rel. Lujan v. County of Bernalillo***, 354 Fed.Appx. 322, 326 (10th Cir. 2009). Furthermore, the claim against Deputy Rashe in his official capacity is simply redundant of a suit against the entity, so it is barred for the same reasons. "[A]n official capacity claim is,

all respects other than name, to be treated as a suit against the entity." ***Kentucky v. Graham***, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).[3]

## V. No Waiver Of Immunity Exists For Plaintiffs' State Law Claims

A governmental entity of New Mexico may not be sued unless the plaintiff's cause of action fits within one of the exceptions granted to governmental entities and public employees in the New Mexico Tort Claims Act (hereafter "NMTCA"). ***See Begay v. State,*** 104 N.M. 483, 486, 723 P.2d 252, 255 (Ct.App.1985), ***rev'd sub nom. on other grounds by Smialek v. Begay***, 104 N.M. 375, 721 P.2d 1306 (1936). If sovereign immunity has been waived under the NMTCA, then "the particular agency that caused the harm may be held liable for the negligent act or omission of the public employee." ***Id.*** However, "[c]onsent to be sued may not be implied but must come within one of the exceptions to immunity under the Tort Claims Act." ***Begay v. State,*** 104 N.M. at 486, 487, 723 P.2d at 255, 256 (internal quotations omitted). Thus, if no specific waiver can be found in the NMTCA, a plaintiff's complaint must be dismissed.

Generally speaking, there is no waiver of immunity for violations of the state constitution. "In the absence of affirmative legislation, the courts of this state have consistently declined to permit individuals to bring private lawsuits for damages to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an express waiver of immunity under the Tort Claims Act." ***Barreras v. N.M. Corr. Dep't,*** 2003 NMCA 27, 133 N.M. 313, 319, 62

---

[3] Of course, it is well established that punitive damages cannot be had against governmental entities. ***City of Newport v. Fact Concerts, Inc.,*** 453 U.S. 247, 263-64, 271, 101 S.Ct. 2748 (1981).

P.3d 770, 776 (Ct. App. 2002). While Plaintiff has not seen fit to identify any specific waiver, it is submitted that the only possibility is **N.M.S.A.1978 § 41-4-12:**

> The immunity granted pursuant to Subsection A of Section 41–4–4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

However, there is no allegation herein of any actual damage suffered by Mr. Graham as a result of the alleged constitutional violations that would suffice to allow for the operation of this waiver, given that there is no physical damage even alleged. ***See Hunt v. Central Consol. School Dist***., 951 F.Supp.2d 1136, 1141-42 (D.N.M.,2013).

Similarly, there is no waiver of immunity for Plaintiff's personal claim of emotional distress. Certainly, there is no waiver for a claim of intentional or negligent infliction of emotional distress under **N.M.S.A.1978 § 41-4-12.**

> The Supreme Court of New Mexico has held that the Legislature has not waived immunity for claims of intentional infliction of emotional distress, *see Garcia–Montoya v. State Treasurer's Office,* 130 N.M. 25, 16 P.3d 1084 (2001)(upholding dismissal of intentional infliction of emotional distress claim, because immunity is not waived under NMTCA), and negligent infliction of emotional distress, *see Weinstein v. City of Santa Fe,* 121 N.M. at 653, 916 P.2d at 1320 (holding that a plaintiff may not maintain a separate bystander claim for negligent infliction of emotional distress under § 41–4–12).

*Hernandez ex rel. Estate of Medrano v. Frias,* Not Reported in F.Supp.2d, 2011 WL 1127882*16 (D.N.M. 2011).[4]

---

[4] Of course, the amount of compensatory damages are limited under the NMTCA, and neither punitive damages nor attorneys' fees nor pre-judgment interest is obtainable. ***See N.M.S.A. 1978, § 41-4-19.*** Accordingly, Plaintiff's request for punitive damages in each of these Counts is, of course, inappropriate.

It is clear from the foregoing that there is no waiver of immunity for this emotional distress claim on Plaintiff's own behalf, whether intentional or negligent. However, it is also noted that Plaintiff could not possibly meet the standard for this claim in any event. Thus, generally speaking, damages for emotional distress in ordinary negligence actions are not permitted in New Mexico. ***Flores v. Baca***, 117 N.M. 306, 313, 871 P.2d 962, 969 (1994). New Mexico does not recognize negligent infliction of emotional distress as a cause of action except for bystander liability. ***Jaynes v. Strong–Thorne Mortuary,*** *Inc.,* 1998–NMSC–004, ¶ 21, 124 N.M. 613, 954 P.2d 45. This is when a bystander suffers "severe emotional shock as a result of witnessing a sudden, traumatic event that causes serious injury or death to a family member." ***Fernandez v. Walgreen Hastings Co.,*** 1998–NMSC–039, ¶ 6, 126 N.M. 263, 968 P.2d 774. It is readily apparent that none of these elements can be met herein.

## CONCLUSION

For all of the foregoing reasons, Defendants submit that summary judgment should be entered in their favor, and against Plaintiff, on all Counts of Plaintiff's Complaint.

                                                Respectfully Submitted:

                                                LAW OFFICE OF JONLYN M. MARTINEZ, LLC

By: ***/s/ Electronically filed May 12, 2014***
     JONLYN M. MARTINEZ
     Attorneys for the County Defendants
     P.O. Box 1805
     Albuquerque, NM 87103-1805
     (505) 247-9488
     (505) 247-9566 (fax)

I hereby certify that a true and correct copy
of this document was to all counsel of record
by CM/ECF system on May 12, 2014:

***/s/ Jonlyn M. Martinez***